IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:22CR115 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW F. DODSON, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Michelle M. Baeppler, First Assistant United States Attorney, and Brian S. Deckert, Assistant United States Attorney, and hereby files this sentencing memorandum. The Government agrees with the calculations contained within the Presentence Investigation Report filed November 10, 2022. (Doc. 31: PSR, PageID 150-171). The Government recommends a term of 57 months in accordance with the following memorandum.

I. **OFFENSE CONDUCT AND GUIDELINE CALCULATION**

    A. **Offense Conduct**

On July 23, 2021, the Orange, Ohio Fire Department called the FBI and informed them that the Orange Police Department had arrested an individual, later identified as the Defendant, for an alcohol-related driving offense. During the arrest and impounding of the vehicle, officers discovered a large cache of explosive precursors, including the following: approximately 10 pounds of Potassium Perchlorate, Potassium Nitrate, powdered sugar, batteries, Vaseline, and a black tactical bag with the words "POLICE" on it containing ear protection and safety glasses.

FBI Special Agents interviewed the Defendant on the same day, while he remained in custody. The Defendant confirmed ownership of the items in his vehicle at the time of his

arrest and added that he used these materials to make smoke bombs for the 4th of July. He stated that he deployed the smoke bombs at his brother's house in Tallmadge, Ohio. The Defendant stated that he still had the materials in his vehicle at the time of his arrest because he had not yet had time to return them to his parents' residence, where he stored them. He denied ever manufacturing a destructive or explosive device.

The FBI obtained records from a chemical company that revealed the Defendant had purchased a total of 50 pounds of Potassium Perchlorate between April 2020 and June 2020.

On July 29, 2021, Facebook responded to a federal search warrant for the Defendant's Facebook profile and provided agents with its contents. A review of the information revealed the following: In July 2020, the Defendant had contact with user1. The Defendant told user1, "People call me the Unabomber" and sent a picture of his tattoo depicting such. He sent a picture of 157 improvised explosive devices and screenshots of a remote detonator and 12 radio antenna devices. The Defendant told user1 he had improvised claymores that contained approximately 1,000 BBs per device. He tried to sell user1 a "Punisher" style soft Armor and flamethrower and sent a picture of his young daughter holding the flamethrower.

On August 4, 2021, FBI agents executed a search warrant at Defendant's residence in Mogadore, Ohio. Items seized included a computer hard drive, a cell phone, an iPod, a "Punisher" tactical vest, a camouflage shotgun and magazine, and a black flame thrower. On the same date, agents executed a search warrant at a storage rental unit in Akron. Items seized included seven gas masks with four canisters, a shirt with a swastika, magazines, a remote detonator with the remote, desktop tower computers, a box of pyrotechnic signal shells and fusing with safety igniters, and a bag of pyrotechnic fuses.

On August 4, 2021, agents interviewed Witness1 who shares custody of her daughter with the defendant. She was shown photographs of a child holding a flame thrower (found through a search of the Defendant's Facebook application pursuant to a federal search warrant), confirmed it was her daughter, and identified the background as the Defendant's former apartment. She reported that she had observed the Defendant make items described as firecrackers and smoke bombs. She told agents the Defendant had tattoos of John Wayne Gacy[1] and the Unabomber on his arm and had a swastika on his arm, which has since been partially concealed with a grenade tattoo. She recalled in 2013 when he poured powder into a container and detonated an explosive, which left a big hole in the ground. She recalled a time, about a year earlier, when the Defendant was at her house and had 15 or 16 guns in his trunk. She stated Akron police arrived when he was attempting to sell the guns and took a black bag full of guns.

On October 1, 2021, the Defendant pled guilty by way of an Information to one count of False Statement Made to an Agency of the United States, in violation of 18 U.S.C. § 1001(a)(2). A presentence investigative report was prepared and released to the parties on February 10, 2022. The PSR included the Witness1's statement containing the above information.

On February 15, 2022, the Defendant sent multiple threatening electronic communications to Witness1 due to the statements that she provided to law enforcement, including the following: "So I just got the final paperwork from th FBI. You said A LOT of

---

[1] The Defendant denies in the PSR that the tattoo depicts John Wayne Gacy in clown makeup; however, it is obvious and apparent that the tattoo matches historical photos of Gacy including the pattern of makeup, clothing, and even background of the pictures.

3

bad sh—about me. Not just about blowing something up in a park. You f---ed me. You f---ed me."; "Youre a piece of s--t and i hope you f-----g die slowly, very soon. Wanna knowwhy im in trouble, becUse of you."; "Hopefully youll Be dead to everyone soon you f-----g snitch"; "Youre why i got arrested. Youre why i lost my job. Because of your statements."; and "Youre dead.".

The victim notified the Government of the communications and left her house to stay with her mother. The Defendant was arrested and denied that he intended to threaten the victim. The Defendant was convicted at trial and is now before the Court for sentencing.

**B.      Guideline Calculation**

The PSR set forth the following computation of the Defendant's advisory sentencing guidelines:

| Group 1: U.S.S.G. § 2J1.2: Obstructing Justice by Retaliating Against a Witness, Victim, or an Informant | | |
|---|---|---|
| Base offense level | 14 | § 2J1.2 |
| Threat of physical harm | +8 | § 2J1.2(b)(1)(B) |
| **Subtotal** | **22** | |

The PSR details the extent of the Defendant's criminal history, of which only 3 points score, placing him in criminal history category II. (Doc. 31: PSR, PageID 157). With an offense level 22 and a criminal history category of II, the Defendant's guideline imprisonment range is 46 to 57 months and is in zone D.

**II.     SENTENCING FACTORS 18 U.S.C. § 3553(A)**

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which states:

> This Court is required to consider the following factors in determining the sentence.
>
>   (a)  Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary,

4

to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

>(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>(2) the need for the sentence imposed--
>
>>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>>(B) to afford adequate deterrence to criminal conduct;
>>
>>(C) to protect the public from further crimes of the defendant; and
>>
>>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>(3) the kinds of sentences available;
>
>(4) the kinds of sentence and the sentencing range established for--
>
>(5) any pertinent policy statement--
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature and circumstances of the Defendant's offense and his history and characteristics are important factors for this Court to consider when imposing a sentence. The Defendant is thirty-three years old and has numerous and repeated offenses for operating a motor vehicle while under the influence of alcohol. (Doc. 31: PSR, PageID 154-57). Additionally, the Defendant has prior convictions for Assault and Contributing to the Delinquency of Minors.

(*Id.*, PageID 155). On June 9, 2016, the Defendant was convicted of Disorderly Conduct for kicking Witness1 and possessed a firearm while intoxicated. (*Id.*, PageID 156). On September 16, 2016, the Defendant was convicted of Disorderly Conduct for ramming Witness1's motor vehicle with his vehicle while he was intoxicated. (*Id.*). On January 13, 2017, the Defendant was convicted of Open Container after he was found inside of his vehicle with an open can of alcohol, a knife, and a set of brass knuckles. (*Id.*).

The Presentence Investigation Report has identified two factors as possible grounds for an upward variance from the sentencing guidelines provisions. (*Id.*, PageID 168). The first factor is the nature of the offense. The second factor for an upward variance is the history and characteristics of the Defendant. As set forth above, the number of unscored offenses and the underlying facts of the Defendant's prior convictions is not properly taken into account in a criminal history category of II. The Defendant's criminal history and the nature of this offense and the FBI's investigation demonstrates a concerning escalation of violence which should be addressed in this Court's sentence.

The Government would agree with the two grounds for an upward variance and request a sentence above the advisory guidelines. For example, if even 1 more point is scored for the Defendant's criminal history, then his Criminal History Category would be a III and his guideline range would be 51-63 months.

### III. ADDITIONAL TERMS OF SUPERVISED RELEASE

The Government would request the following additional special conditions of supervised release based upon the relevant evidence that Defendant utilized the internet and social media to communicate with other users about the construction of destructive devices and has threatened violence utilizing internet communication services:

Computer Restrictions/Monitoring – Restrict the use of a computer, internet, gaming system, media storage device, or any device that can access the internet without prior authorization and consent to monitoring and random examinations. Restrict the use of social media, relay chats, newsgroups, testing applications, or online communication platforms such as Skype, Discord, or any other software that specializes in providing chat and voice calls.

Extremist Materials – Restrict the viewing and/or possession of physical and electronic materials, e.g. books, pamphlets, websites, blogs, chatrooms, videos, and social media platforms, that reflect extremist or terroristic views.

No contact order – Restrict in-person, telephonic, online, or other contact with the victim during the term of supervised release.

## IV. **CONCLUSION**

Based upon the serious nature of the offense conduct; the Defendant's lengthy and repeated criminal history; his commission of new offenses and obstructing justice while on pretrial supervision; and complete lack of regard for the criminal justice system, the Government respectfully requests this Court sentence the Defendant above the advisory guideline range to a term of 63 months.

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:  /s/ Brian S. Deckert
      Brian S. Deckert (OH: 0071220)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3873
      (216) 522-8355 (facsimile)
      Brian.Deckert@usdoj.gov